UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DENES Q., et al.,

                          Plaintiffs,                    **REPORT AND**

                - against -                             **RECOMMENDATION**

                                                     07-CV-1281 (CBA) (JO)

JANET CAESAR, et al.,

                        Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       Plaintiffs Denes Q. and Ann Marie C. acting as legal guardians of their infant daughter Y.Q.[1] as well as on their own behalf, filed the instant suit against the City of New York and several of its individual employees (collectively, the "City defendants") as well as certain medical institutions and a physician (collectively, the "medical defendants"), alleging that the defendants caused the infant plaintiff to be removed from her parents without consent, probable cause, or due process of the law; and that they maliciously caused the adult plaintiffs to be prosecuted in Family Court. *See* Docket Entry ("DE") 1, Complaint ¶ 1. The plaintiffs and the City defendants now propose to enter into a partial settlement. Specifically, they propose to compromise all of the plaintiffs' claims against the City defendants for the sum of $115,000. Of that amount, the infant plaintiff is to receive $11,319.05 (to be held in a bank account for her benefit until her 18th birthday); her parents are to receive $63,069.87; and the plaintiffs' counsel will receive the remaining $40,611.08 as their fee (including disbursements). I respectfully recommend that the court approve the proposed settlement as fair, reasonable, and in the best interests of the infant. *See* Loc. Civ. R. 83.2(a); N.Y. C.P.L.R. §§ 1205-08; N.Y. Jud. Law § 474.

---

[1] I use pseudonyms in this document to protect the infant plaintiff's privacy. *See* E-Government Act of 2002, Pub. L. No. 107-347 (as amended Aug. 2, 2004); Fed. R. Civ. P. 5.2.

I.  Background

The plaintiffs allege that on January 4, 2006, Denes Q. and Ann Marie C. brought their daughter Y.Q. to the emergency room of Forest Hills Hospital after discovering a burn on her torso. The defendant physician concluded that the injury was the result of child abuse, and caused Y.Q. to be placed in protective custody rather than allowing her to return home with her family. The plaintiffs further assert that the City defendants should have discounted that doctor's conclusion, but that instead they filed a petition in Queens County Family Court charging the adult plaintiffs with abusing Y.Q. The court relied on the defendants' representations at a hearing on January 10, 2006, and ordered Y.Q. removed from her parents' custody. Y.Q. was not permitted to return to her parents' custody until February 9, 2006, and then only under the supervision of the Administration for Children's Services. The Family Court proceedings remained pending until March 27, 2006, when the City defendants withdrew their petition. *See* Complaint ¶¶ 23-61.

The plaintiffs brought suit alleging that the defendants' conduct violated their rights under the Constitution as well as federal and state laws. They asserted federal law claims under 42 U.S.C. § 1983 ("Section 1983") for violation of their constitutional rights under the First, Fourth and Fourteenth Amendments. They also brought state law claims of malicious prosecution, unlawful interference with parental custody of children, unlawful imprisonment, abuse of process, gross negligence, medical malpractice, and defamation. Complaint ¶¶ 62-127. The City defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), largely relying on claims for qualified immunity. The medical defendants also moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* DE 21; DE 24;

DE 42 (order dated October 1, 2008) at 2-3. The court granted the motions as to malicious prosecution claim under Section 1983 as well as the abuse-of-process claim but denied the motions in all other respects, and ordered discovery to begin under my supervision. DE 42 at 3. The City defendants appealed, DE 43, withdrawing the appeal approximately eight months later on June 9, 2009. DE 68. Fact discovery continued during the pendency of the appeal, over the City defendants' unsuccessful request for a stay. *See* DE 57 (letter of March 2, 2009); DE 64 (order dated April 3, 2009). I held several discovery conferences and the parties exchanged written discovery. See DE 46 (minute entry dated October 23, 2008); DE 66 (minute entry dated April 3, 2009); DE 67 (minute entry dated June 8, 2009). On July 2, 2009, the City defendants notified the court that they had agreed with the plaintiffs to settle the claims against them for $115,000. DE 69. The claims against the medical defendants remain outstanding.

I held a hearing on August 3, 2009, to determine the reasonableness and propriety of the proposed settlement of the infant's cause of action and to determine a reasonable attorneys' fee and proper expenses incurred by the plaintiffs' attorneys in prosecuting this action. *See* Loc. Civ. R. 83.2(a); N.Y. C.P.L.R. § 1208. Attorneys Christopher Weddle ("Weddle") and Jill Zuccardy ("Zuccardy"), adult plaintiffs Denes Q. and Ann Marie C., and the infant plaintiff Y.Q. all appeared before me in person. In support of the proposed settlement, Zuccardy submitted her own declaration and declarations from Denes Q. and Ann Marie C., each of which describes and endorses the proposed settlement. *See* DE 70 at 5-7, Declaration of Jill Zuccardy ("Zuccardy Dec."); *id.* at 8-9, Declaration of Denes Q. ("Denes Q. Dec."); *id.* at 10-11, Declaration of Ann Marie C. ("Ann Marie C. Dec."). At the conference Zuccardy and Weddle explained the terms of the settlement on the record, as well as their view as to why the proposed result is a fair one. The

adult plaintiffs indicated that they understood and agreed to the terms of the proposed settlement.[2]

II.    Discussion

   A.    The Settlement Amount

There is no bright-line test for concluding that a particular settlement is fair. *See, e.g.*, *Newman v. Stein*, 464 F.2d 689, 692-93 (2d Cir. 1972). Rather, the court must determine whether the proposed settlement is "'fair, reasonable, and adequate' by comparing 'the terms of the compromise with the likely rewards of litigation.'" *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). A strong presumption exists that a settlement is fair and reasonable where "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently ...." *Ross v. A.H. Robins Co., Inc.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) (internal citations and quotation marks omitted).

There is no indication of collusion in this case. To the contrary, having reviewed the plaintiffs' written submissions and having spoken with the adult plaintiffs and their counsel at the August 3, 2009 hearing, I am confident that they agreed to this settlement only after arm's-length bargaining with the defendants. I further conclude that the exchange of written discovery and counsel's investigation into the circumstances surrounding the alleged conduct of the defendants

---

[2] I had informed the plaintiffs' counsel in advance of the hearing that Y.Q., who is now five years old, need not attend. Her parents brought her along with them, as well as their younger child, for lack of alternative child-care options; I did not attempt to explain the settlement to the infant plaintiff or to question her as to her understanding or approval of it as I would normally do with respect to an older infant plaintiff.

were sufficient to enable an intelligent analysis of the issues and the proposed settlement. In addition, Zuccardy and Weddle assert, as required by state law, that neither they nor their firm have any interest in the settlement of the instant claim adverse to Y.Q.'s interests, and that they have not received nor will they receive any compensation from any party adverse to the interests of Y.Q. other than the attorneys' fees they are receiving from the City defendants as part of the settlement. Zuccardy Dec. ¶ 13; *see* N.Y. C.P.L.R. § 1208. I am satisfied that Y.Q.'s interests are not being sacrificed in any way and that counsel has faithfully represented those interests and the interests of the adult plaintiffs.

In considering a proposed settlement, the following factors are relevant, among others: the complexity, expense and likely duration of the litigation; the extent to which the parties have completed discovery; the litigation risks as to issues of both liability and damages; the defendants' ability to withstand a greater judgment; and the reasonableness of the proposed settlement fund compared to the best possible recovery and in light of all the litigation risks. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

In applying these factors, I recognize that I need "'not decide the merits of the case or resolve unsettled legal questions.'" *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 739 (S.D.N.Y. 1993) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Moreover, courts have held that under New York law it should be presumed that the guardian or parent of the infant is acting in the best interests of the child, and accordingly, I give deference to Denes Q. and Ann Marie C.'s views regarding the fairness of the settlement. *See, e.g., Sabater v. Lead Indus. Ass'n, Inc.*, 2001 WL 1111505, at *3-*4 (S.D.N.Y. Sept. 21, 2001); *Stahl v. Rhee*, 643 N.Y.S.2d 148, 153 (N.Y. App. Div. 1996) (noting that "[i]n a case where

reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail"). The litigation in this case has caused, and is likely to continue to cause if not settled, a significant expense to all of the parties involved. Moreover, Zuccardy and Weddle expressed the view at the hearing that there are significant risks associated with proceeding to trial, including the possibility that the plaintiffs could lose and the defendants could seek to recover the costs of the litigation.

Under the terms of the proposed settlement, the City defendants will pay $115,000. Zuccardy and Weddle's law firm will receive $40,611.08 in attorneys' fees and costs. The adult plaintiffs will jointly receive $63,069.87, and Y.Q. will receive the remaining $11,319.05 which will be held in an account for her until she reaches adulthood. Based on an evaluation of the circumstances of the case, I conclude that the proposed settlement is reasonable and respectfully recommend that the court approve it.

B. <u>Attorneys' Fees</u>

Under applicable law, the criterion for determining the appropriate amount of attorneys' fees to be awarded in the context of an infant compromise proceeding is "'suitable compensation for the attorney for his service ... [on] behalf of the ... infant.'" *Allstate Ins. Co. v. Williams*, 2006 WL 2711538, at *4 (E.D.N.Y Sept. 21, 2006) (quoting *Werner v. Levine*, 276 N.Y.S.2d 269, 271 (N.Y. Sup. Ct. 1967)). Although Denes Q. and Ann Marie C. have agreed to the proposed fee, such agreements are merely advisory and serve only to guide the court in making a determination committed to its sound discretion. *Id.* (quoting *Werner*, 276 N.Y.S.2d at 271). Zuccardy has submitted a declaration listing the various services her office has performed during the pendency

of this case. Zuccardy Dec. ¶ 11; DE 70 at 16-38 (redacted billing records).[3] Both Denes Q. and Ann Marie C. have stated that they entered into a retainer agreement under which they agreed, in the event they settled the case, to pay a fee based on the attorneys' time and hourly rates. Denes Q. Dec. ¶ 5; Ann Marie C. Dec. ¶ 5; DE 70 at 12-15 (retainer agreements). Zuccardy and Weddle explained at the August 3, 2009 hearing that the requested fee represents approximately half of the total fees incurred thus far in the litigation. Since the claims against the medical defendants are still outstanding, this figure of 50% is the attorneys' best estimate at the present time of the work they have done on the plaintiffs' claims against the City defendants. Based on these representations, and given the amount of work involved, I conclude that the requested attorneys' fee, which I note is approximately one third of the total settlement payment, is reasonable and I respectfully recommend that the court approve the fee.[4]

---

[3] The billing records are redacted on the docket because the case is still proceeding against the medical defendants. The plaintiffs produced unredacted records for *in camera* inspection. Under the circumstances, I believe that the competing interests of the attorney-client privilege and the transparency of judicial proceedings will best be achieved by permitting the unredacted records to remain under seal until the remaining claims against the medical defendants are resolved, but that they then be unsealed. I therefore respectfully recommend that the court enter an order to that effect.

[4] In unrelated litigation prosecuted by the same firm that represents the plaintiffs here, I concluded that an essentially identical retainer agreement should be deemed void and unenforceable because it expressly permitted the firm to reject certain settlement offers without consulting the client they represented. *Gray v. Dummitt*, 2006 WL 5157708, *5-*9 (E.D.N.Y. Dec. 21, 2007). The district judge assigned to the case later concluded that although such an interpretation would be "problematic," the retainer could nevertheless be enforced based on one of the attorneys' oral statement that he did not intend and such a construction and would not in any event reject a settlement offer without consulting his client. The court therefore vacated my earlier order. *Gray v. Dummitt*, 2009 WL 210865, *1 (E.D.N.Y. Jan. 9, 2009). I continue to believe that the express language of the retainer agreement is deeply troubling and impermissible, even if the attorneys who use it would never seek to withhold a settlement offer from their client (an assertion by the attorneys that I fully credit, but that makes their insistence on the continued use of such language all the more perplexing). Accordingly, to ensure that the problem has had

7

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court approve the parties' proposed partial settlement. Specifically, I recommend that the court approve the following terms to which the parties have agreed: a payment by the City defendants of a total of $115,000 in satisfaction of all of the plaintiffs' pending claims, with $40,611.08 in fees and costs to be paid out of that amount to the plaintiffs' attorneys, $63,069.87 to be received jointly by the plaintiffs Denes Q. and Ann Marie C., and the remaining balance of $11,319.05 to be deposited in an interest-bearing savings account at Emigrant Savings Bank located at 261 Broadway, New York, New York, and held for Y.Q. until the event of her 18th birthday on March 5, 2022. I further recommend that the court retain jurisdiction of this action for the purposes of enforcing this infant compromise order and the terms of the underlying settlement.

IV. Objections

Any objections to this Report and Recommendation must be filed with the Clerk no later than August 24, 2009. *See* Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(a), (d). Failure to file objections within that period, absent the entry of an order extending that deadline pursuant to Federal Rule of Civil Procedure 6(b)(1), will waive the right to appeal the district court's order.

---

no effect on this litigation, I inquired of counsel whether there had been any settlement offer that was not conveyed to the plaintiffs in this case, and they answered in the negative. I therefore conclude that regardless of the retainer agreement's validity, the provision for attorneys' fees in the proposed settlement itself is altogether fair and should be approved.

*See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
      August 6, 2009

                                            /s/ James Orenstein
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge